UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-14090-CR-MOORE/LYNCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ALI JAMES JORDAN,

    Defendant.
_____/

FILED by _____ D.C.

OCT 2 2 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## REPORT AND RECOMMENDATION ON
## EVIDENTIARY HEARING ON VIOLATION OF SUPERVISED RELEASE

**THIS CAUSE** having come on to be heard for final evidentiary hearing pursuant to an Order of Reference from the District Court in respect to alleged violations of supervised release set forth in a Petition dated September 28, 2009, and this Court having conducted such a hearing on October 21, 2009, makes the following report and recommendation to the District Court.

    1.    The Defendant is charged in the Petition with the following violation of supervised release:

    **Violation Number 1**    **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about September 18, 2009, in Fort Pierce, Florida, the defendant was arrested by the Fort Pierce Police Department and charged with possession of cocaine contrary to Florida Statute 893.13.

    2.    The government called as its first witness David Farinacci. Mr. Farinacci is the Defendant's United States Probation Officer and was supervising the Defendant at the time of the alleged violation set forth in the Petition. The government elicited testimony from Mr. Farinacci concerning prior violations of supervised release involving this Defendant.

3. On or about September 17, 2007, the Defendant tested positive for the presence of cocaine during a urinalysis test. On or about December 11, 2007, the District Court adjusted the Defendant's supervised release to include a period of 180 days on electronic monitoring.

4. Thereafter, on or about January 18, 2008, the Defendant was arrested by officers of the St. Lucie County Sheriff's Office for narcotics and gun charges. A violation was filed against the Defendant in respect to that arrest. The Defendant was later found not guilty at a jury trial on those State charges and the violation of supervised release was dismissed.

5. On or about February 11, 2009, another violation of supervised release was filed against the Defendant for his failing to follow the electronic monitoring directives of his U. S. Probation Officer and in failing to contact his U. S. Probation Officer within 72 hours of being questioned/contacted by any law enforcement officer. Mr. Farinacci testified that his offices recommended to the District Court that no action be taken against the Defendant in respect to that violation.

6. On April 11, 2009, the Defendant was arrested on State charges of resisting an officer without violence. Those charges are still pending. Based upon the disposition of that violation of supervised release, the District Court on June 8, 2009 adjusted the Defendant's supervised release to add another electronic monitoring requirement.

7. The present violation arose on September 18, 2009 when the Defendant was arrested by officers of the Fort Pierce Police Department for possession of cocaine. Mr. Farinacci identified the Defendant in court as the person who he has been supervising and who this violation concerns. He spoke with the Defendant about this most recent arrest

over the telephone on or about September 21, 2009. The Defendant told Mr. Farinacci that he was not guilty and that the cocaine was placed there by the police. The Defendant denied any of the drug paraphernalia or drug residue the police purportedly found within his residence. As for the sum of $1,800 which was seized from his person, the Defendant told Mr. Farinacci that money was from his unemployment checks.

8. Mr. Farinacci testified that the Defendant has permission to leave his home between the hours of 8:00 and 12:00 Monday through Friday inclusive for job searches. He is also permitted to attend church. Otherwise, the Defendant needs Mr. Farinacci's permission to be away from his home since the Defendant is still under electronic monitoring.

9. It was at this point during the evidentiary hearing that counsel for the government brought up some four alleged violations of the electronic monitoring where the Defendant purportedly was outside of his residence without Mr. Farinacci's permission. However, Mr. Farinacci testified that he had no evidence nor any knowledge of any such violations.

10. This Court would also point out at this time that the prior violations of supervised release involving this Defendant as referenced above and taken from Mr. Farinacci's testimony have nothing to do with the present violation. There was no objection to that testimony. However, while those prior violations may be relevant to final disposition by the District Court in regards to whatever sentence the Court wishes to impose for the present violation of supervised release, this Court finds that those prior violations are not charged in this Petition and have no relevance in respect to the ultimate fact of whether the

Defendant did, in fact, violate his supervised release as alleged in the Petition dated September 28, 2009.

11. Mr. Farinacci testified that in or about December 2008 the Defendant moved to his present residence which is 427 North 11th Street in Fort Pierce, Florida. For a period of time, the Defendant was living there with his cousin. However, Mr. Farinacci confirmed with the Defendant that approximately two weeks before his arrest on September 18, 2009, that the Defendant had been living alone. The Defendant had told Mr. Farinacci that his cousin had moved out some time prior to his most recent arrest which serves as the underlying basis for the violation in this Petition.

12. Mr. Farinacci has visited the Defendant's home on occasion pursuant to his duties as the Defendant's supervising Probation Officer. These visits are unannounced. At no time during any of his visits did Mr. Farinacci observe any contraband or narcotics in the residence. At no time did the Defendant appear to be under the influence of any substance. While there is no search condition permitting a full scale search of the Defendant's residence by his Probation Officer as part of his sentence in this case, Mr. Farinacci is permitted to make a visual inspection upon such unannounced visits. This visual inspection of the surroundings within the home did not reveal any contraband.

13. The next witness called by the government was Detective Charles Davis of the Fort Pierce Police Department. He has been a law enforcement officer with specific narcotics training and experience. He is also part of the Joint State/Federal DEA Task Force in this jurisdiction.

14. On September 18, 2009, Detective Davis was on duty. He identified the Defendant in court as Ali Jordan, the person who was arrested for the underlying State charges which serve as the basis for this violation.

15. The Defendant's arrest arose out of a controlled buy of five crack cocaine rocks purportedly made by a cooperating confidential source during the week of August 24, 2009. Detective Davis testified that this particular confidential source was utilized to provide probable cause for the State search warrant issued for the search of the Defendant's residence which resulted in these charges. This same confidential source has been used in three to fifteen previous cases by Detective Davis and this confidential source has always proven truthful and reliable. The information provided by this confidential source in the past has resulted in several successful prosecutions of criminal cases. Detective Davis testified that the confidential source is not working off charges. This confidential source is paid money for his work as it relates to each controlled buy. He is paid $40.00 for each controlled buy that he makes. Search warrants have been issued in unrelated cases in the past based upon information provided by this confidential source. Those search warrants have resulted seizure of evidence and filing of criminal charges.

16. Prior to the controlled buy in this case, the confidential source was searched by law enforcement to make sure that the source did not have any narcotics or any other contraband on his person. The confidential source was given $50.00 to purchase five rocks of crack cocaine from the Defendant at the Defendant's residence on North 11th Street in Fort Pierce. The confidential source was given two $20 bills and one $10 bills with the serial numbers recorded. The confidential source was also wired. The wire was not recorded. It was utilized so that the officers, including Detective Davis, could monitor

5

the transaction between the Defendant and the confidential source. The monitoring would also insure the safety of the confidential source during the transaction.

17. On the date when the controlled buy took place, Detective Davis and other officers were on surveillance listening to the wire transmission. The confidential source was provided serialized investigative funds and went to the Defendant's house. The view of the confidential source at the Defendant's front door was blocked by a vehicle, so Detective Davis was not able to see exactly what happened from that point forward. He relies upon the information he heard over the wire and that given to him by the confidential source subsequent thereto.

18. The confidential source knocked on the door of the Defendant's residence. The Defendant answered, went back inside and came back out with the five rocks of crack cocaine which the Defendant then gave to the confidential source in exchange for the $50.00. The confidential source then left and met at a prearranged place with Detective Davis and the other officers. The crack cocaine field tested positive for the presence of cocaine.

19. Counsel for the Defendant objected to this testimony and stated that Detective Davis did not have the qualifications nor expertise to testify as to the presence of cocaine. This Court overruled the objection based upon the testimony of Detective Davis concerning his training as a narcotics agent and his expertise in investigating narcotics activity. His testimony also described the manner in which the field test was conducted and what results he was looking for to determine a positive result. This testimony clearly established that he does have the expertise to field test narcotics.

20. Based upon this controlled buy, a State search warrant was signed by Circuit Judge Geiger on or about September 10, 2009. It was executed on the Defendant's residence at 427 North 11th Street, Fort Pierce, Florida, on September 18, 2009. As the officers drove up to execute the search warrant, the Defendant was seen sitting on the stoop near his back door. As he observed the officers pull up, the Defendant ran inside the home. The officers followed. As the officers entered the residence, the Defendant was seen coming from the bathroom and Detective Davis heard the toilet "recycling" in such a fashion consistent with having just been flushed. The toilet was "destroyed" according to Detective Davis' testimony, but no narcotics were found. The trap outside the sewer line was also opened and no narcotics were found there either.

21. During the search of the residence, officers found two pieces of crack cocaine rock on a table in the kitchen. Also, they found in the same location a spatula with residue which later field tested positive for the presence of cocaine. There was also a 100 gram weight similar to that used with a scale. Detective Davis testified such scales are sometimes utilized for measuring narcotics. However, no scale was found in the residence. Outside the residence was found a Pyrex bowl inside two plastic bags. The Pyrex bowl had residue on it which later field tested positive for the presence of cocaine. Detective Davis testified that he did not know how long the Pyrex bowl had been outside nor who disposed of it there. On cross examination, Detective Davis said he had no way of knowing how long the crack cocaine or the spatula with the cocaine residue were in the kitchen.

22. The Defendant was arrested and searched. The Defendant denied any knowledge of narcotics in his residence. There was in excess of $1,800 seized from his

person. Of this amount, $868.00 was loose and the sum of $1,000 was wrapped with a rubber band. A narcotics detection canine was brought to the scene and alerted to the pocket on the Defendant where the money was located. None of the bills seized matched the serialized funds which were purportedly paid to the Defendant for the five rocks of crack cocaine during the controlled buy from the Defendant some twenty-five days prior to the execution of the State search warrant on the Defendant's residence.

23. Detective Davis testified that as the officers arrived at the residence, they did not see anyone other than the Defendant enter or leave the residence. The search involved seven officers and took a couple of hours. The canine was not brought into the residence.

24. The Defendant presented no witnesses at the hearing. However, without objection, this Court admitted two exhibits into evidence on behalf of the Defendant. Defendant's Exhibit No. 1 in evidence is a copy of a bank statement from the Defendant reflecting a withdrawal of approximately $2,000.00 sometime during September of 2009. Defendant's Exhibit No. 2 admitted into evidence is a copy of the Unemployment Compensation Form showing that the Defendant has a credit of some $1,600.00 of unemployment compensation funds.

25. The Defendant argues that any testimony concerning field testing the narcotics from the controlled buy any narcotics seized from the Defendant's residence should be stricken since Detective Davis does have the expertise to so testify. This Court denied the motion based upon its prior ruling. This Court finds that Detective Davis as a narcotics investigator and as part of the DEA Task Force has the necessary training and

experience to conduct field tests for narcotics. This Court's finding is based upon Detective Davis' testimony at this hearing referenced previously herein.

26.     Next the Defendant argued that there is no evidence of the controlled buy aside from the testimony of the confidential source. The Defendant had objected to the hearsay testimony by Detective Davis concerning information provided by the confidential source. As stated by this Court on the record, hearsay testimony is admissible in proceedings involving revocation of supervised release. See United States v. Balogun, 168 Fed. Appx. 395 (11th Cir. 2006). Based upon that standard, this Court must balance the Defendant's right to confront the adverse witness against the grounds as to why the government does not have that witness available, and this Court must then determine whether or not the testimony is reliable. Here, clearly the record reflects that the confidential source has been utilized by law enforcement in the past in many cases. Maintaining the confidential source's anonymity is justified in regards to the confidential source's continued safety and continued use in this and other investigations.

27.     This Court finds the testimony of Detective Davis to be credible and reliable. He testified that he has used this particular confidential source on many prior occasions. This confidential source has always proven reliable and truthful. This confidential source has provided information resulting in successful prosecutions and issuance of search warrants which resulted in the seizure of evidence of crimes. Further, the confidential source identified the Defendant as being the person from whom he purchased the crack cocaine in the controlled buy from the Defendant's residence. The only time that the confidential source was out of the view of Detective Davis was when the transaction took place at the Defendant's front door of his residence. There was a wire over which the

officers were able to listen during the transaction to corroborate the information provided by the confidential source. The confidential source had been searched prior to the controlled buy, provided serialized funds, and then immediately met at a pre-determined location to turn over the narcotics purportedly bought from the Defendant. As a result of all of the foregoing, this Court finds the hearsay testimony of Detective Davis concerning the information provided from the confidential source which served as the probable cause basis for the State search warrant is highly reliable.

28. Counsel for the Defendant also argues that there is insufficient evidence that the Defendant actually possessed the crack cocaine rocks, residue on the spatula, and Pyrex bowl which were seized during the execution of the search warrant on September 18, 2009. Counsel argues that since there is no testimony as to how long those items were in their location where they were found by law enforcement, there is no way to establish that the Defendant possessed them. Further, counsel for the Defendant argues that there was no other evidence of narcotics in the home. There were no drug ledgers or scales found within the residence normally associated with narcotics sales.. Additionally, during unannounced visits, Mr. Farinacci never observed anything which would indicate that the Defendant was utilizing his residence to sell narcotics.

29. This Court disagrees with the assertions by counsel for the Defendant. The crack cocaine and spatula with the cocaine residue were found in plain view in the kitchen area according to Detective Davis' testimony. Mr. Farinacci's testified that the Defendant stated he resided alone at that residence and had done so for several weeks previous to the execution of the state search warrant. It is quite a stretch of the imagination for Defendant's counsel to imply that maybe another individual or the Defendant's cousin left

these narcotics there and that the narcotics ignored by the Defendant. There is no evidence in the record to substantiate such and assertion.

30. This Court agrees that there were no drug ledgers or scales found at the residence. As for the Pyrex bowl, this Court is not considering that to be an item within the Defendant's possession. The Defendant lives in an apartment at this address. The Pyrex bowl was inside plastic bags. The bowl had cocaine residue on it, but was not found within the Defendant's residence. There is no evidence as to how or when that Pyrex bowl was deposited outside the Defendant's residence. The mere fact that it may have been adjacent to the Defendant's residence does not mean that it came from the Defendant's residence. Therefore, this Court is not considering that Pyrex bowl to have been possessed by the Defendant.

31. However, this Court cannot ignore the crack cocaine and the residue found on the spatula which were clearly found within the Defendant's kitchen. The Defendant's statements to Mr. Farinacci that he was "set up" and/or that the officers placed the cocaine there are unsubstantiated. No evidence has been presented to this Court to substantiate this assertion either.

32. The standard of proof in cases involving revocation of supervised release is a preponderance of the evidence standard pursuant to the United States Supreme Court decision in <u>Johnson v. United States</u>, 529 U.S. 694 (2000). <u>See also</u> <u>United States v. Croskey</u>, 309 F.3d 302 (11th Cir. 2009) and Title 18, United States Code, Section 3583(e)(3). Based upon that standard, there is more than sufficient evidence to find that the Defendant did possess cocaine on September 18, 2009 and was arrested by the Fort

Pierce Police Department for possession of cocaine contrary to Florida law on that date at his residence as charged in the Petition filed in this case.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant be found to have violated his supervised release in respect to Violation Number 1 as set forth in the Petition, that his supervised release be revoked, and that a hearing for final disposition of this matter be set before the District Court at its earliest convenience.

The parties shall have ten (10) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable K. Michael Moore, United States District Judge assigned to this case.

**DONE AND SUBMITTED** this 22nd day of October, 2009, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. K. Michael Moore
AUSA Jennifer Millien
AFPD Peter Birch
USPO David Farinacci
U. S. Marshal